**STATE of Missouri, Plaintiff-Respondent,**

v.

**Eugene TILLEY, Defendant-Appellant.**

**No. 37692.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 22, 1977.

Brent J. Williams, Clayton, Rosecan, Popkin & Chervitz, Alan G. Kimbrell, St. Louis, for defendant-appellant.

John Danforth, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., Evelyn M. Baker, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Presiding Judge.

Defendant Eugene Tilley was convicted by a jury of stealing over $50. Because the

jury could not agree upon punishment, the court sentenced defendant to three years in the custody of the Department of Corrections (§ 546.440, RSMo1969).

The facts that frame the issues are simple. On July 16, 1975, David Angle parked his pickup truck in front of his house in the City of St. Louis and went to bed. At about 1:30 a. m. he was awakened by breaking glass. He looked out of a window and saw the defendant inside the truck attempting to take out the radio-stereo. Mr. Angle dressed and ran out of his house with a shotgun in his hand. A parked car sped off in a northeasterly direction. Angle then ordered defendant to get out of the truck and lie on the sidewalk until the police arrived. After defendant was arrested, he told the police that he intended to sell the items which he was attempting to steal. Mr. Angle searched his truck and found that his toolbox was missing. It contained tools for which he had paid something in excess of $100 approximately two years before. The radio-stereo had been purchased by him some six months before for the price of $70.

In his motion for new trial after new counsel had been appointed, defendant contended that he did not knowingly and intelligently waive his right to counsel and was prejudiced by being required to represent himself. The Sixth Amendment of the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." When an accused waives this right, he must competently and intelligently waive the protection of this amendment. *Johnson v. Zerbst,* 304 U.S. 458, 464–465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' *Adams v. United States ex rel. McCann,* 317 U.S. 269 at 279,

63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435." *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975). In *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948), the Supreme Court of the United States said: "The fact that an accused may tell him [the judge] that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered." *See also State v. Gee,* 408 S.W.2d 1, 3 (Mo.1966). In this connection, the burden of producing evidence of voluntary and understanding waiver of the right to counsel shifts to the State. *Morris v. State,* 456 S.W.2d 289, 292[2] (Mo.1970).

We examine the record to determine whether defendant knowingly and intelligently waived his right to counsel. On August 28, 1975, the public defender was appointed by the court as attorney for the defendant. When the case was called for trial in October of that year, an assistant public defender appeared with the defendant and the following colloquy was had between the court and the defendant:

THE COURT: This is Cause No. 75–1898, *State of Missouri vs. Eugene Tilley,* wherein the charge is Stealing $50 or over.

Mr. Tilley, as I understand it, you have expressed the desire to represent yourself in this case; is that correct, sir?

THE DEFENDANT: Yes, sir.

THE COURT: As you know, previously this Court appointed the Public Defender Bureau of the City of St. Louis to rep-

resent you. That was done back on August 28, 1975, in Division No. 16 of this Court.

Now, you have a constitutional right to be represented by counsel. Do you understand that, sir?

THE DEFENDANT: Yes, sir.

THE COURT: But as I further understand, you have decided that you do not wish to be represented by counsel at the trial of your case; is that correct?

A  Yes, sir.

Q  Despite the fact that you do have the constitutional right to have an attorney represent you, and, in fact, one has been appointed to represent you; is that correct?

A  Yes, sir.

THE COURT: May I, for the record, inquire of you why you do not wish to have the Public Defender's office represent you in the trial of this case?

THE DEFENDANT: Because all he wanted me to do is plead guilty. He kept telling me, just plead guilty, plead guilty. And I didn't—I'm not guilty, so I didn't want to plead guilty. But the way he was talking, I didn't have a chance, you know, so he said, 'Plead guilty.'

THE COURT: In other words, as I gather, your attorney, you are of the opinion he felt the case was such that he felt the State would get a conviction, and he felt it would be better for you to plead guilty than try the case. Is that pretty well what, does that sum up what he said?

THE DEFENDANT: Yes.

THE COURT: And you differ with that analysis?

THE DEFENDANT: Yes.

THE COURT: And you do wish to go ahead and try the case representing yourself?

THE DEFENDANT: Yes, sir.

It is clear after a fair reading of the record that defendant understood that he had a constitutional right to be represented by counsel and that he did not desire counsel who had been appointed for him to continue to represent him because this lawyer was insisting that he plead guilty. However, there is no indication in the record that defendant understood the dangers and disadvantages of self-representation, as required by the authorities cited herein. The court made no examination into defendant's awareness of the elements of the offense charged, possible defenses and mitigating circumstances. Later during the trial, defendant's lack of knowledge and training in this regard, as compared to that of a trained attorney, became quite obvious.

■  There could be no question but that defendant under the evidence submitted to this jury was guilty of some crime. He could have been charged by the circuit attorney's office with tampering with a motor vehicle but the crime charged was the stealing of property of the value of $50 or more under §§ 560.156 and 560.161, RSMo1969. If the value of the property stolen was less than $50, then defendant could be punished by a fine or imprisonment in the county jail or by both such fine and imprisonment. However if the value of the property was at least $50, then punishment could be enlarged to include two to ten years in the penitentiary as well as imprisonment in the county jail or a fine. The issue of value was therefore very important to determine whether defendant was guilty of the crime charged. Evidence on this issue consisted of testimony of Mr. Angle which in substance established that he had purchased the radio-stereo combination six months before the alleged theft for $70 and had purchased tools some two years before for something over $100. The tools were not found in the defendant's possession when he was apprehended in Mr. Angle's truck. The radio-stereo was apparently still in the truck and there was some dispute as to whether it was still in place or had been taken out of its place in the truck. The only question with regard to value was a double question, the response to which could be referred to either portion of the question. It is reported in the record as follows:

Q Sir, can you tell us, to the best of your knowledge, what you paid, the combined value of the tools and the stereo?

A It was about two hundred dollars. It may be the rule that, where the property is secondhand, proof as to its cost and its length of use may be put before the jury and this constitutes evidence of value. *State v. Everett,* 448 S.W.2d 873, 876[1] (Mo.1970); *State v. Bresse,* 326 Mo. 885, 33 S.W.2d 919, 921[3] (Mo.1930). But the reference in the statute is to the value of the property on the open market. *State v. Armstrong,* 361 S.W.2d 811, 817[4] (Mo. 1962). Because no objection was made as to the standard of value and no cross-examination or preliminary question with regard to using such a standard was requested by defendant, *State v. Napper,* 381 S.W.2d 789, 791[1] (Mo.1964), there was sufficient evidence of value to go to the jury. It is not that this matter was raised as a contention by the defendant to afford him a new trial but rather it is one phase of the trial where trained counsel may have been able to render invaluable assistance to the defendant to convince the tryers of fact that defendant was guilty of a lesser crime than the crime charged.

Another area where defendant's lack of skill became evident was during jury selection. Out of a panel of twenty-four prospective jurors, defendant was entitled to eight and the State to four peremptory challenges to reduce the panel to the twelve who would try the case. The voir dire examination was conducted by counsel for the State and by the court. Although the defendant's right to interrogate was explained to him, he did not participate in asking any questions of the members of the panel. No challenges for cause were made by the defendant. After peremptory challenges were made by both sides, defendant ended up with a jury which might not be considered entirely unbiased by an experienced attorney. Juror 1 had several friends or relatives who served on law enforcement bodies, one of whom had been killed. Juror 2 had been a victim of crime in that the place of business in which this juror was interested had been burglarized. Juror 3 had served on a criminal jury before. Juror 4 had served on a jury in a criminal case and had had his auto and camper trailer stolen. Juror 5 had been a victim of purse snatching. Juror 6 was a very good friend of a detective on the police force. Juror 7 had been a member of a criminal jury which had returned a verdict of guilty. Juror 8 was the widow of a former policeman and also had a nephew in California and two cousins in Milwaukee who were policemen. Juror 9 had been the victim of a house burglary. Juror 10 had served on a criminal jury five or six times. Juror 11 had been the victim of car theft and had a nephew who was a police officer. Juror 12 had had his house and garage burglarized.

Because the record fails to prove defendant made an intelligent waiver of his right to counsel, the judgment is reversed and the cause is remanded for a new trial.

CLEMENS and DOWD, JJ., concur.