STATE of Missouri, Respondent,

v.

James SCHNELLE, Appellant.

No. WD 50066.

Missouri Court of Appeals,
Western District.

June 4, 1996.

Richard E. McFadin, Gallatin, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, Philip M. Koppe, Assistant Attorney General, Kansas City, for respondent.

Before SPINDEN, P.J., and BERREY and LAURA DENVIR STITH, JJ.

LAURA DENVIR STITH, Judge.

Defendant-Appellant James Schnelle appeals from his convictions under Counts I and II of assault in the first degree, § 565.050, RSMo 1986; under Count III of knowingly burning, § 569.055, RSMo 1986; and under Count IV of tampering in the first degree, § 569.080.1(2), RSMo 1986. Following a trial by jury, Mr. Schnelle was sentenced as a prior and persistent offender to consecutive prison terms of twenty, fifteen, seven and ten years, respectively.

Mr. Schnelle contends on appeal that the trial court erred when it required him to proceed to trial *pro se* without making a "knowing and intelligent" waiver of counsel and when it refused to grant Mr. Schnelle's multiple requests for continuances. The State recognizes that under Missouri law a waiver of the right to counsel is not effective unless it is made knowingly and intelligently, but argues that it met its burden of showing that this standard was met here.

We disagree. As discussed below, under Missouri law the defendant's waiver is not knowing and intelligent unless he has first and *timely* been informed as to the nature of the charges against him, potential sentences if convicted of the offenses, potential defenses he can offer, the nature of the trial proceedings, the fact that, if the defendant refuses counsel, the defendant will be required to proceed *pro se,* and the dangers of proceeding *pro se.* Here no record was made of what information, if any, had been given to the defendant *prior* to the day of trial. While some of the information required by Missouri cases was disclosed to the defendant on the day of trial, defendant was not then given an opportunity to obtain counsel once he was made aware of such matters and once it was finally determined that the defendant was not entitled to appointed counsel. In this limited circumstance, we remand for a new trial.

Mr. Schnelle also contends, and the State concedes, that the Information as to Count II erroneously charged him with first degree assault but cited the statute governing second degree assault and described conduct constituting second degree assault. Similarly, the jury verdict form and the judgment erroneously said the jury had found him guilty of first rather than second degree assault. We agree that, as a result of the latter error, Mr. Schnelle would be entitled to correction of the judgment and resentencing for second degree assault.

## I. *FACTS RELEVANT TO WAIVER OF COUNSEL*

Debra Smith and Christina Lucas received various physical injuries on November 22,

1993. The issues in the trial below were whether Mr. Schnelle was responsible for some or all of the injuries, and if so, whether some or all of his conduct was justified.

The State asserted that Mr. Schnelle was responsible for the injuries to Ms. Smith, Ms. Lucas, and in addition that he burned the car of Ms. Lucas. He was charged with assault as to both Ms. Smith and Ms. Lucas under Counts I and II; with a Class D felony of knowingly burning under Count III, § 569.055 [1]; and with a Class C felony of tampering in the first degree under Count IV, § 569.080.1(2).

Neither the transcript nor the Legal File filed with this Court as part of the record on appeal include any proceedings prior to the actual trial date for this case, which was June 20, 1994. The court's docket entries show only that Mr. Schnelle was arraigned on May 5, 1994, that he appeared without counsel and pleaded not guilty, and that he appeared before the court again on May 19, 1994 and on June 9, 1994. The May 19, 1994 docket entry states only that Mr. Schnelle appeared without counsel and the cause was continued to June 20, 1994, with a docket call set for June 9, 1994. The June 9, 1994, entry states only that Mr. Schnelle again appeared without counsel and "[c]ause remains set on trial docket for June 20, 1994 at 9:00 a.m. Defendant ordered to appear and be present."

Mr. Schnelle appeared without counsel on June 20, 1994. The court inquired as to whether Mr. Schnelle had an attorney. Mr. Schnelle informed the court that he did have an attorney at one point, but he no longer had the money to pay him.

The court then asked Mr. Schnelle whether he had applied for a public defender, noting that the court had previously (presumably on May 19, 1994) told Mr. Schnelle to fill out an application for assistance. Mr. Schnelle explained that he had gone to the public defender's office to fill out an application, but was told not to bother because he would not qualify for appointed counsel since he had earned too much income the prior year. According to Mr. Schnelle, he in-

formed the court of this the next time he appeared (presumably June 9, 1994). The court responded, "[T]hen I told you you need to go ahead and hire a lawyer because you didn't think you'd qualify. . . ." To which Mr. Schnelle responded "I can't hire a lawyer. I can't hire one. The one that I had quit."

For the first time, the court then made an evaluation as to whether Mr. Schnelle would qualify for a public defender. While Mr. Schnelle was currently unemployed, he stated he expected to receive approximately $1,700 per month in workers' compensation. He had also posted two bonds in the case amounting to $65,000. He said that this took all of his money, and that he had little or no funds remaining with which to hire a lawyer. The court said that, based on this evidence, Mr. Schnelle would not qualify for a public defender.

The court then inquired as follows as to whether or not Mr. Schnelle was ready to proceed *pro se:*

The Court: Are you ready to proceed at this time without one [an attorney].

Mr. Schnelle: If you make me, I will. I guess I don't have a choice. I've spent money for nothing. I'm not going to have one if the Court won't appoint me one.

The Court: How old are you, Mr. Schnelle?

Mr. Schnelle: Forty-six.

The Court: And how many years of schooling have you completed?

Mr. Schnelle: Tenth grade.

The Court: And you understand you've been charged with assault in the first degree, and you've also been charged with— that's in Count I of the indictment. Do you understand that?

Mr. Schnelle: I understand. You've read it to me.

The Court: Do you understand that's four separate counts?

Mr. Schnelle: Yes, sir.

---

**1.** All statutory references are to RSMo 1986 as supplemented through the date of the offense unless otherwise indicated.

The Court: The first two counts charge you with assault. Do you understand that?

Mr. Schnelle: Yes, sir.

The Court: And Count III charges you with knowingly burning, and Count IV charges you with tampering in the first degree. Do you understand that?

Mr. Schnelle: Yes. I don't know about the knowingly burning—

The Court: Well, you understand you've been charged?

Mr. Schnelle: Yes. I was charged with them in November, same charges.

The Court: All right. And do you understand the range of punishment in the cases?

Mr. Schnelle: I guess. It don't make any difference. I'm not going to plead guilty. I'll have to be found guilty.

At that point, the State for the first time indicated that it would call witnesses in addition to those whom it had previously identified. The State also informed the court and Mr. Schnelle for the first time that it wanted to file a substitute Information adding Mr. Schnelle's prior convictions. Mr. Schnelle was then informed that he could be classified as a persistent offender.

If he were not classified as a persistent offender, Mr. Schnelle could have been sentenced to no more than fifteen years under Counts I and II, five years under Count III, and seven years under Count IV. § 558.011(1), RSMo Supp.1993. The classification as a persistent offender increased the range of punishment to at least twice the range of punishment to which he could previously have been sentenced: under Counts I and II he could now be sentenced to thirty years, under Count III to ten years, and under Count IV to twenty years. § 558.016(7).

The court informed Mr. Schnelle of the new range of punishment, and then stated:

The Court: **Do you understand, sir, by charging you as a persistent offender that it enhances or increases the range of punishment in the case?**

Mr. Schnelle: **He's charging me with something that happened in 1968?**

The Court: No. The fact that you— if in fact you had those convictions, that would change the range of punishment in these counts.

(emphasis added).

The court then requested Mr. Schnelle to sign a waiver of counsel form pursuant to Section 600.051(1).[2] Mr. Schnelle *refused* to sign a waiver form. The court then asked Mr. Schnelle if he was "ready for trial." Mr. Schnelle responded:

Mr. Schnelle: I'll need a lawyer.

The Court: You don't qualify for a lawyer, and you didn't get one. So I don't know what else we can do.

Mr. Schnelle: Select the jury.

During voir dire, Mr. Schnelle stated to the jury "It's been said I have to defend myself.... I didn't choose to defend myself." Mr. Schnelle further complained that the hearing to determine whether he would qualify for an attorney only happened that day.

At trial, Mr. Schnelle requested two continuances in order to obtain records to present in his defense. He said these records were in the custody of his former attorney and had not been returned to him. He said they would have supported his claim that Ms. Smith had previously robbed his house and stolen his car and that he believed she was in his house robbing it again on the night in question. Mr. Schnelle also asked for the continuance so that he could obtain medical and other documents in the possession of his former attorney. These documents allegedly would show that Ms. Smith had reported that she was beaten and raped earlier on the same day, before she came to Mr. Schnelle's house, and that her injuries were caused by that earlier attack, not by Mr. Schnelle. The trial court denied Mr. Schnelle's requests for

---

2. Section 600.051(1) states in relevant part that: Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case ... if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court....

continuances to obtain these documents from his former counsel. Mr. Schnelle was unable to determine how to ask non-hearsay questions to elicit any similar evidence from the witnesses. Thus, he was thus unable to present most of his evidence in support of his theory of defense.

On the morning of the second day of the trial, at the beginning of closing arguments, Mr. Schnelle requested another continuance in order to allow an attorney whom he had retained after court the previous night to appear on this behalf. That attorney was conducting a trial in Independence that morning but would have been available later in the day or otherwise could have sent his associate. The court also denied this continuance because of the late juncture at which it was requested.

The jury convicted Mr. Schnelle of assault under Count I, knowingly burning under Count III; and tampering in the first degree under Count IV. Count II submitted the elements of assault in the second degree, but the verdict form and judgment recited that Mr. Schnelle had been found guilty of assault in the first degree. Mr. Schnelle was sentenced as a prior and persistent offender to consecutive prison terms of twenty, fifteen, seven and ten years, for a total term of imprisonment of 52 years.

## II. *THE LAW REQUIRES THAT A DEFENDANT MUST "KNOWINGLY AND INTELLIGENTLY" WAIVE HIS RIGHT TO COUNSEL*

■ Mr. Schnelle contends on appeal that the trial court erred in requiring him to proceed to trial *pro se* because he did not knowingly and intelligently waive his right to counsel.[3] The Sixth Amendment of the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assis-

tance of Counsel for his defence." When a defendant waives this right, he must knowingly and intelligently waive the protection of this amendment. *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *State v. Gilmore,* 697 S.W.2d 172, 174 (Mo. banc 1985).

■ Because a defendant who manages his or her own defense relinquishes many of the benefits associated with the right to counsel, *Wilson,* 816 S.W.2d at 305, it is not enough to show that the defendant simply agreed to waive the right to counsel. Rather, it is *the State's burden to prove that the defendant "knowingly and intelligently" waived the right to counsel.* Unless the court determines on the record that a waiver has occurred, the trial should not proceed without counsel. *Gilmore,* 697 S.W.2d at 174; *State v. Daywalt,* 756 S.W.2d 953, 955 (Mo.App.1988); *State v. Stark,* 706 S.W.2d 899, 900 (Mo.App.1986); *State v. Ehlers,* 685 S.W.2d 942, 945 (Mo.App.1985); *State v. Tilley,* 548 S.W.2d 199, 200 (Mo.App.1977).

■ Whether a waiver is made intelligently and knowingly depends on the "particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." *State v. Hunter,* 840 S.W.2d 850, 858 (Mo. banc 1992). The defendant's knowledge of all relevant facts "need not appear in the trial record to support a finding that the waiver of counsel was proper," *id.,* and no specific litany is required. Nonetheless, the record must show that a defendant "was apprised of the difficulties of self-representation in terms sufficient to enable him to intelligently decide which course to follow." *Wilson,* 816 S.W.2d at 307.

In order to comply with these requirements, Missouri courts have held that a valid waiver must be made:

**3.** The State contends that Mr. Schnelle did not raise this issue in his motion for new trial and thus it has not been properly preserved for appellate review. Rule 29.11(d). Mr. Schnelle did contend in his motion that a new trial should have been granted because he was forced to proceed to trial *pro se,* even though he did not explicitly state in the motion that he did not "knowingly and intelligently" waive his right to counsel. We need not resolve whether this was

sufficient to preserve the issue for appellate review because "the right to counsel is so basic to a fair trial that [its] infraction can never be treated as harmless error." *State v. Wilson,* 816 S.W.2d 301, 303 (Mo.App.1991), *quoting, Penson v. Ohio,* 488 U.S. 75, 88, 109 S.Ct. 346, 353, 102 L.Ed.2d 300 (1988). Even assuming the issue was not sufficiently preserved in the motion for new trial, for the reasons discussed *infra,* it would constitute plain and prejudicial error.

with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id.* at 306, *quoting, von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948). The trial court can make certain that a defendant's waiver is made knowingly and intelligently "only from a penetrating and comprehensive examination of all the circumstances...." *Tilley,* 548 S.W.2d at 200.

■ In addition, it is *essential* that a defendant be advised of the difficulties of proceeding without counsel *while there is still time to choose whether or not this right should be waived.* *State v. Bethel,* 896 S.W.2d 497, 500 (Mo.App.1995); *Wilson,* 816 S.W.2d at 307. The reason for this requirement is obvious. It would serve no purpose to alert defendant to the matters he should consider in deciding whether to waive counsel only after such a waiver had already and irrevocably occurred. Indeed, to provide this information at that point would serve only to demoralize defendant as he set out on the difficult task of defending himself.

Prior Missouri cases provide excellent guidance as to how to apply these principles to a particular fact situation.

In *State v. Hunter,* 840 S.W.2d at 858–59, the Missouri Supreme Court held that a waiver was knowing and intelligent where it was apparent from the record that the defendant had made his waiver only after the court had fully informed him of the crime, the potential punishment, his rights, how the trial process would work, his potential defenses, and so forth. The Court in that case thus found the waiver proper, for the defendant:

at all times understood the charges and the range of punishment, ... understood his right to representation at all critical stages and did not desire to be represented by counsel at the guilty plea proceeding. He was informed of lesser included offenses and the possibility of punishment for those offenses, possible defenses and other facts having a bearing on the admis-

sibility of his own statements and on the essential mental states for a determination of guilt. He understood his right to jury trial at both the guilt and punishment phases. He also knew and understood that a reasonable likelihood existed that he would receive the death penalty....

*Id.* at 858–59. Similarly, in *State v. Davis,* 867 S.W.2d 539, 546 (Mo.App.1993), the evidence showed that a waiver was knowingly and intelligently given where defendant took part in a one-hour hearing on his motion to dismiss counsel. At the hearing he gave a detailed account of his understanding of the trial process and affirmed that he wished to proceed *pro se.*

By contrast, the Missouri Supreme Court held that the waiver in *Morris v. State,* 456 S.W.2d 289 (Mo.1970), was not a knowing and intelligent waiver. In that case, the trial court advised the defendant of the range of punishment and that if he "had a lawyer he would advise you whether or not the papers charging this crime against you are in proper form; he would determine whether or not you should plead guilty or stand trial; you understand those things?" *Id.* at 290.

*Morris* held that the waiver was not knowing and intelligent where the court's "explanation of the role of a lawyer was woefully inadequate" and the defendant was not advised of the correct range of punishment. *Id.* at 293. The Court also noted that the fact that defendant had a "prior brush with the law" was a factor to consider, but standing alone was insufficient to support an inference of a knowledgeable waiver. *Id.*

Other cases similarly recognize that a waiver is not effective where the defendant does not understand the elements of the crime, possible defenses, or the disadvantages of self-representation. *See, e.g. State v. Tilley,* 548 S.W.2d at 201 (Mo.App.1977) (defendant was not aware of the disadvantages of self-representation where there was no evidence that defendant was aware "of the elements of the offense charged, possible defenses and mitigating circumstances"); *Wilson,* 816 S.W.2d at 307 (court failed to inform defendant of disadvantages of self-representation while defendant still had an opportuni-

ty to obtain counsel); *Bethel,* 896 S.W.2d at 500 (same).

### III. *MR. SCHNELLE'S WAIVER OF COUNSEL WAS NOT KNOWINGLY AND INTELLIGENTLY MADE*

In support of waiver, the record demonstrates that Mr. Schnelle had been told on at least two occasions prior to the trial date that he needed to apply for public legal assistance or to hire a private attorney. He did not apply for a public defender and he did not hire another attorney after the one he had retained no longer represented him. Before trial, he said he could not hire an attorney if one was not appointed for him. This Court concurs with the admonishment in *Wilson* that "[c]onscious attempts by a defendant to manipulate or intentionally delay the proceedings by refusing to hire private counsel should not be tolerated...." *Wilson,* 816 S.W.2d at 308. A defendant cannot simply avoid trial by purposely failing to hire an attorney. If the record demonstrated that this is what occurred here, we would affirm.

That is not the situation here, however. The claim in this case is that the record does not support a finding that Mr. Schnelle made a *knowing and intelligent* waiver of counsel. The cases cited above admonish that, in order to show that a waiver was knowing and intelligent, the trial court should *make a record* demonstrating (1) that the defendant *timely* understood that he would have to represent himself at trial if he failed to hire counsel; and (2) that the defendant was adequately informed about the nature of the charges against him, the severity of the sentences he could receive, and the type of the defenses he could offer, *prior* to the time he waived counsel. *See Bethel,* 896 S.W.2d at 500; *Wilson,* 816 S.W.2d at 307; *Hunter,* 840 S.W.2d at 858–9; *Davis,* 867 S.W.2d at 546; *Morris,* 456 S.W.2d at 293; *Tilley,* 548 S.W.2d at 201. *See also State v. Dowdell,* 583 S.W.2d 253, 256 (Mo.App.1979) (there was no inference of intentional and knowing waiver of counsel even though accused was financially able to employ counsel and was afforded sufficient time to do so where she did not find out until the morning of trial that the public defender had withdrawn).

Moreover, as noted earlier, it is the State's burden to establish that the waiver was knowing, intelligent and voluntary. *See Daywalt,* 756 S.W.2d at 955 and other cases cited *supra,* § II. Here, the State failed to do so, for there is no record evidence of such a knowing and intelligent waiver.

Rather, the trial court *made no record at all* of any proceedings involving Mr. Schnelle prior to the day of trial other than docket entries showing that Mr. Schnelle was arraigned, was unrepresented, and that a trial date was set. None of these documents indicate that Mr. Schnelle was given the information he needed, under the above cases, in order to make a knowing and intelligent waiver.

The transcript of the proceedings on the day of trial similarly fails to reveal that Mr. Schnelle was timely given the information he needed in order to make a knowing and intelligent waiver. Rather, the record requires the opposite conclusion. The transcript contains only the judge's recollection that he told Mr. Schnelle he would have to represent himself if he did not obtain representation from the public defender or hire a private attorney. We are doubtful that such an offhand remark can constitute the kind of record required by prior cases. Even if it could do so, the judge nowhere suggested he had previously told Mr. Schnelle that, if he failed to somehow obtain counsel by June 20, 1994, he would have to proceed to trial *pro se* on that date, as required by *Wilson.*

Moreover, the evidence showed that defendant had made efforts to obtain legal representation. He visited the public defender's office but was discouraged from filling out the application. He hired an attorney, but the attorney then withdrew from representation. No hearing was held to determine his ultimate right to be represented by a public defender before the day of trial.

In these circumstances, we cannot say that Mr. Schnelle should have known when he appeared without counsel on the day of trial that he would be required to go to trial *on that day* regardless of whether he qualified

for assistance from the public defender. Rather, the evidence demonstrates that Mr. Schnelle incorrectly still believed the court would have to allow him additional time to hire counsel if he did not have a right to an appointed attorney to represent him. In fact, he specifically told the court, and the jury in voir dire, that he was not aware prior to the day of trial that he would be proceeding to trial with or without counsel, that he "didn't know I was going to court until today" and that "I have not chosen to not have an attorney."

Yet, after determining that Mr. Schnelle did not qualify for appointed counsel, the court simply asked Mr. Schnelle if he was ready for trial. Mr. Schnelle responded, "I'll need a lawyer," thus indicating that he did not want to waive his right to counsel now that he knew one would not be appointed. However, the court responded:

> You don't qualify for a lawyer, and you *didn't* get one. So I don't know what else we can do.

(emphasis added). The court thus did not allow Mr. Schnelle any additional time in which to obtain a lawyer. This was clearly improper. *Bethel,* 896 S.W.2d at 499–500. Given these facts, it was incumbent on the trial court to give Mr. Schnelle a further reasonable opportunity to hire counsel and to obtain the evidence he had given to the withdrawn attorney before requiring him to proceed to trial.

Moreover, the record supports the inference that, if Mr. Schnelle had been given more time, he would have retained counsel, for he did retain counsel by the morning of the second day of the trial. Even then, the court refused to delay arguments in order to wait for the arrival of that counsel.

The record also supports the claim that Mr. Schnelle was unaware of the severity of the sentences he could receive and the nature of the charges at the time he impliedly waived counsel by failing to hire an attorney. Thus, immediately after the trial court determined that Mr. Schnelle did not qualify for a public defender and questioned him as to whether he was ready to proceed *pro se,* the State amended the information to charge Mr. Schnelle as a persistent offender. This amendment *more than doubled the possible length of his sentences.* Had he known the severity of the sentences to which he would be subject, Mr. Schnelle might well have undertaken greater measures to secure representation. Yet, he had no such opportunity.

In addition, Mr. Schnelle did not understand the implications of the amendment charging him as a persistent offender. When the court explained that he was being so charged, he apparently believed that it meant that the State was charging him with a crime which had been committed 25 years earlier, stating "He's charging me with something that happened in 1968?"

The court did not adequately explain how Mr. Schnelle's prior convictions were relevant, how or whether he could defend against their use, or any other matters relevant to his defense. Similarly, the court never explained the benefits of proceeding with legal representation rather than *pro se.* Of course, at that stage, the court had already determined not to grant the requested continuance to allow Mr. Schnelle to hire counsel.

The prejudice from the lack of representation, particularly as it related to his understanding of the nature of the charges against him, continued at trial. For instance, Mr. Schnelle was charged under Count II with assault as to Ms. Smith. Apparently, Mr. Schnelle believed that the charge of assaulting Ms. Smith had been dropped because she did not testify at the trial. Thus, half-way through the trial Mr. Schnelle commented "I guess I'm not charged with Debra Smith. She never testified." No one corrected this misapprehension. Yet, the court submitted the charge of assaulting Ms. Smith and the jury convicted him of that charge. There was also nothing in the record to suggest that Mr. Schnelle understood any possible lesser included offenses or defenses to the crimes charged.

In addition, as discussed below, the Information and the verdict form charged him with first degree assault but the allegations in the Information and the verdict-director supported only second degree assault of Ms.

Smith. This resulted in entry of a judgment erroneously stating he had been convicted of first degree assault. Had counsel been available this type of error would have been very unlikely to occur.

For all of these reasons, we hold that it was error to require Mr. Schnelle to proceed to trial without counsel for the record presented in this case does not establish that Mr. Schnelle made a "knowing and intelligent" waiver of his right to counsel.[4] The record affirmatively demonstrates Mr. Schnelle was prejudiced by proceeding without an attorney. For these reasons, we remand for a new trial at which Mr. Schnelle will be given an adequate opportunity to obtain representation by an attorney.

## IV. THE ERRORS IN THE INFORMATION AND JUDGMENT AS TO COUNT II SHOULD BE CORRECTED UPON REMAND

██ Mr. Schnelle also argues that the inconsistencies in the Information, verdict director, verdict form and judgment of the trial court as to Count II require dismissal of that count. Although the Information identifies the crime charged under Count II as "assault in the first degree", the Information actually charges the defendant with violation of Section 565.060, which is assault in the second degree,[5] and further describes the elements of assault in the second degree rather than assault in the first degree.[6] The State admits the Information was in error in the above regard, but argues that it nonetheless adequately informed Mr. Schnelle of the charges against him. We agree.

 An information is not defective where it "contains all essential elements of the offense and clearly apprises the defendant of the facts constituting the offense."

State v. Cusumano, 819 S.W.2d 59, 61 (Mo. App.1991). Moreover, mistakes in describing the degrees of an offense will not affect the sufficiency of the information where the mistakes do not detract from the factual statements of the charge. State v. Hale, 878 S.W.2d 510, 512 (Mo.App.1994). While the Information incorrectly used the term "first" instead of "second" degree, it did cite the correct statute and, more importantly, the facts alleged correctly describe the elements of second degree assault. No reversible error occurred.

Mr. Schnelle also contends that the trial court erred in entering a judgment for first degree assault, as this was inconsistent with the verdict director for second degree assault, and that this error caused the judge to sentence him for first degree rather than second degree assault. The State agrees that the judgment erroneously states defendant was convicted of first degree assault, but suggests that the trial court must have been aware that the conviction was actually for second degree assault, for he gave defendant a lower sentence under this count than under the other first degree assault count.

We cannot engage in such speculation. Because we reverse and remand the entire case for retrial due to the failure to provide Mr. Schnelle with an adequate opportunity to obtain counsel, however, we need not remand for resentencing on this Count. Rather, we alert the parties to this error for their benefit in preparing instructions in the second trial of this matter.

For the reasons stated above, the judgment of the trial court is reversed and the case is remanded for a new trial for which Mr. Schnelle, if he desires, is entitled to retain counsel by appropriate methods.

4. Because we reverse and remand for a new trial, we need not address the issues of whether the trial court erred by refusing to grant Mr. Schnelle's requests for continuances and whether the verdict was against the weight of the evidence.

5. Count II of the Information charges:
the defendant, in violation of Section 565.060 RSMo. committed the class C felony of assault in the first degree, punishable upon conviction

under Sections 558.011.1(3) and 560.011 RSMo .... defendant knowingly caused physical injury to Debra Smith by means of dangerous instrument, to wit: a stick or club.

6. A person commits assault in the second degree if he "attempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous · instrument." § 565.060.

SPINDEN, P.J., concurs.

BERREY, J., not participating in the decision because of illness.