320 S.W.3d 191 (2010)
In the Interest of: M.M., a minor.
No. ED 93857.
Missouri Court of Appeals, Eastern District, Division Five.
August 31, 2010.
*192 Patricia Harrison, St. Louis, MO, for Appellant.
Sakina Yasmine Ahmad, St. Louis, MO, for Respondent.

OPINION
MARY K. HOFF, Judge.
M.M., a juvenile, appeals from the Order denying the Motion to Vacate the Order and Judgment of Jurisdiction entered pursuant to Section 211.031.1(3), RSMo 2000,[1] adjudicating M.M. of the delinquency offense of Tampering in the First Degree, in violation of Section 569.080. M.M. argues the court erred in denying the motion because: (1) she did not voluntarily, intelligently, or knowingly waive her right to counsel; and (2) there was no factual basis for her guilty plea. We reverse and remand.

Factual and Procedural Background
On May 16, 2009, M.M. was charged by petition with the delinquency offense of Tampering in the First Degree pursuant to Section 569.080.1(2). A detention hearing was held on May 20, 2009, and an attorney with the Public Defender's Office entered her appearance on behalf of M.M. The matter was set for an adjudication hearing on June 23, 2009. M.M. was released to the custody of her mother with specific conditions including participating in the home detention program and was advised that any violation of the rules may result in her placement in detention. At that time, the family believed an attorney from the Public Defender's Office would be representing their daughter, M.M.
Days before trial, M.M.'s mother received a letter from the Public Defender advising she would seek to withdraw in M.M.'s case as the family did not meet the indigency standards. Just prior to trial, the Deputy Juvenile Officer made a home visit to the family. The mother advised of her need for a continuance due to the *193 letter from the public defender's office. The Deputy Juvenile Officer informed mother that if she requested a continuance, he would ask that M.M. be detained for various home detention violations. No specific violation reports were filed prior to that meeting or thereafter.
On the day of trial, the court announced it had a motion from the Public Defender's Office to withdraw from the case. M.M.'s mother stated that she was aware of the request. The court explained the Attorney for the Juvenile Officer was ready to proceed and wanted to know whether the family would like time to consult with a private attorney. M.M.'s mother stated, "We'd like to consult with an attorney, because we." The court replied, "Do you know how much timeAnd I don't have a lot of time that I can extend in terms of continuing this case." M.M.'s mother requested a few weeks to a month. The Attorney for the Juvenile Officer indicated July 19, 2009, was the next possible date for her witnesses to be available for trial. She then requested that M.M. be detained during the continuance due to six alleged home detention violations. No specific information was given concerning these allegations and M.M.'s mother stated, "I don't understand this." M.M. and her mother then attempted to explain the alleged violations.
The court discussed whether M.M. should be detained in light of the alleged violations or whether an electronic monitor was available pending trial. The Deputy Juvenile Officer stated that no GPS systems were available but was not sure on the availability of the electronic monitor. The court took a recess and asked the Deputy Juvenile Officer to look into the availability of an electronic monitor or else it would have the child detained for the entirety of the continuance lasting until July 20 or 21, 2009.
Immediately after the recess, the court confirmed with M.M.'s mother that she had the option of entering a plea of guilty and offering an explanation during which the court would ask questions about the incident precipitating the charge. The court advised that once M.M. pled and the court proceeded with questioning, she could not then withdraw her plea and request to do something else. M.M. and her mother then agreed that she would enter a plea and proceed with the court's examination. The court inquired, "And you're not represented today? You're notYou don't have an attorney appearing with you today?" M.M. responded, "No, ma'am." The court then reiterated, "But ... you would like to proceed in this case?" M.M. confirmed that she did and the court proceeded to inquire into whether she was pleading guilty to the offense of tampering in the first degree on May 15, 2009, as alleged in the petition.
At this point, M.M. was sworn in and the court proceeded with the guilty plea. The court inquired about the recommendation of the Deputy Juvenile Officer, to which he responded "[o]fficial court supervision." The court confirmed that M.M. understood this recommendation. The court established that M.M. was not under the influence of any drugs, medication, or alcohol and that nothing was impairing her ability to understand the proceedings. The court then discussed with M.M. the understanding of her rights, asking whether she discussed her plea of guilty with her mother, to which she responded that she had. The court inquired into whether she understood that she did not have to plead guilty in this case, and that she could instead go to trial, "[a]nd understand that if you have a trial, I'd have a trial proceeding before me, the [A]ttorney for the Juvenile Officer,... would have to present her case and her evidence. You would then have an *194 opportunity to present an explanation or a defense. But rather than do that, you want to admit that thisthat this offense is what happened?" M.M. responded, "Yes, ma'am." The Attorney for the Juvenile Officer then explained what she would have proven at trial:
the State would have proved, beyond a reasonable doubt, that the juvenile committed the offense of tampering in the first degree, which is a Class C felony, in that on or about May 15, 2009, in the City of St. Louis, State of Missouri, at approximately 8:30 in the evening in the 1500 block of Cochran Place, the juvenile, knowingly and without the consent of the owner, unlawfully operated a motor vehicle. That was a 2004 Chrysler Sebring.
When asked by the court if she was admitting to this offense as described by the Attorney for the Juvenile Officer, M.M. responded, "Yes, ma'am." The court then asked M.M. to explain what happened in her own words. M.M. proceeded to relate the events that resulted in her arrest adding that she had permission from her friend to drive the car but only later realized the friend did not have permission to operate the vehicle. Following this exchange, the court asked M.M. to reaffirm her understanding the offense of tampering in the first degree, "which is if you're riding in a car without the owner's permission?" M.M. replied, "Yes, ma'am."
The court's final questions were whether anyone had forced her to come in and give this testimony, to which she replied "No, ma'am." M.M. then stated she was giving testimony voluntarily and she wanted the court to accept her plea. The court accepted the plea of guilty as being voluntary and found that "the juvenile understands what she is doing." The court also found a factual basis for the admission, and that she was guilty beyond a reasonable doubt of having committed the charged offense. The court entered its Judgment of Jurisdiction reflecting this admission and scheduled a disposition hearing.
At the disposition hearing, the Deputy Juvenile Officer recommended official court supervision. The Deputy Juvenile Officer indicated he had gone over the all of the conditions and rules with M.M. and her mother. The owner of the vehicle then testified about the damage to her car and sought restitution. As she failed to provide a receipt for losses, the court gave her 30 days to submit documentation. The court entered an Order and Judgment of Disposition placing M.M. on official court supervision.
On July 13, 2009, the court amended the Order of Disposition to require M.M. to pay $500 restitution for the damage to the owner's car. The court ordered the disposition placing M.M. on official court supervision subject to the general rules of probation and specific rules contained in the June 23, 2009, Order.
On July 16, 2009, M.M. filed a Motion to Vacate the Order and Judgment of Jurisdiction and set the cause for a new adjudication hearing. The motion stated the facts concerning this cause and alleged M.M.'s right to counsel and any waiver of her right was not voluntary, intelligently, or knowingly made as required by law. On October 16, 2009, the court denied the motion without including findings of fact or conclusions of law. This appeal follows.[2]

*195 Standard of Review

Juvenile proceedings are reviewed under the same standard as other court-tried cases. In the Interest of J.A.H., 293 S.W.3d 116, 118 (Mo.App. E.D. 2009); In the Interest of D.L., 999 S.W.2d 291, 293 (Mo.App. E.D.1999). Juvenile court decisions will be sustained unless there is no substantial evidence to support the verdict; it is against the weight of the evidence; or it erroneously declares the law or misapplies the law. J.A.H., 293 S.W.3d at 118; D.L., 999 S.W.2d at 293.

Discussion
In her first point, M.M. argues the court erred in denying the Motion to Vacate the Order and Judgment of Jurisdiction because M.M. did not voluntarily, intelligently, or knowingly waive her right to counsel. M.M. contends she felt coerced into pleading guilty under threat of being detained if the hearing was continued for the family to find counsel. M.M. further contends her right to counsel was not properly explained to her in violation of her 6th Amendment right to counsel and her 14th Amendment right to due process of the law and to a fair trial. We agree.
To assure a full and fair hearing, a juvenile is entitled to be represented by counsel in all proceedings. Section 211.211.1; Rule 116.01(a). Because of the importance of the right to counsel and to the fairness of the proceedings, there must be a strict and literal compliance with the statutes affecting this right and failure to strictly comply results in reversible error. In the Interest of D.J.M., 259 S.W.3d 533, 535 (Mo. banc 2008); D.L., 999 S.W.2d at 293-4. The constitutional requirements for waiver of counsel by juveniles in proceedings should be no less than those required for waiver of counsel by adults in criminal actions. D.L., 999 S.W.2d at 294. An effective waiver of counsel must be voluntary, knowing, and intelligent. Id. A purported waiver by a child requires courts to take special care when scrutinizing its effect. Id. at 294 (citing Haley v. Ohio, 332 U.S. 596, 599, 68 S.Ct. 302, 92 L.Ed. 224 (1948)). Whether the waiver is valid depends on the particular circumstances of the case and should be reviewed based on the "totality of the circumstances," including the background, experience and conduct of the accused, the child's age, education and intelligence, and capacity to understand the warnings given. Id. (citing In re A.D.R., 603 S.W.2d 575, 584 (Mo. banc 1980)). Further, if the record does not show that the waiver was made intelligently and knowingly, the presumption is that it was not. Id. (citing State v. Davis, 934 S.W.2d 331, 334 (Mo. App. E.D.1996)).
Here, the record shows M.M. was 16 years old and had no prior history with the court. At the detention hearing, on May 20, 2009, M.M. was informed she would be represented by counsel provided by the Public Defender's Office. On June 17, 2009, days before the adjudication hearing, an attorney from the Public Defender's Office filed a Motion to Withdraw alleging M.M. was not indigent and therefore should be permitted to withdraw from representation. On the same day, the mother received a letter from the Public Defender's Office informing her that M.M.'s case did not qualify for an attorney and that it intended to seek a motion to withdraw from representation. On June 22, 2009, the Deputy Juvenile Officer met with the family for a home visit. The mother informed the Deputy Juvenile Officer about the letter from the Public Defender's Office and explained that she would need time to get a new lawyer. The Deputy Juvenile Officer advised the family that M.M. had several home detention violations and if they sought a continuance at *196 the adjudication hearing, he would recommend that M.M. be detained.
On June 23, 2009, at M.M.'s adjudication hearing, the mother immediately asked for more time to obtain counsel for M.M. In response to the mother's request, the Deputy Juvenile Officer informed the court that M.M. had six home detention violations and, if the case was continued, M.M. should be detained. In light of this announcement, the court then discussed with the family that such violations would require detention or an electronic monitor to be put in place until the new hearing date could be determined. The court then took a recess for the Deputy Juvenile Officer to determine whether alternatives to detention were available. After the recess, there was the following exchange:
COMMISSIONER CLARKE: She canShe can enter a plea of guilty and she can offer an explanation, I can ask her what's going on....In fact, I will ask her what's happened and what's going on. But she can't then withdraw it and say, well, I want to do something else.
[MOTHER]: Okay. She'll go ahead and then plead, and then you can ask her to explain.
COMMISSIONER CLARKE: Okay. SoWell, if that'sif that's what you're saying, you want toyou want to enter a plea?
[MOTHER]: Yes.
THE JUVENILE: Yes, ma'am.
COMMISSIONER CLARKE: Okay.
Well, then let's-let's go ahead and get on the record then.
Following this exchange, M.M. admitted to the allegations without counsel present at either the adjudication or disposition hearing. The Deputy Juvenile Officer thereafter dropped his recommendation for detention and recommended Official Court Supervision at home with her mother. Here, the record shows M.M.'s decision to proceed was predicated on the fact that her mother believed her daughter, upon pleading guilty, would later be able to explain her defense to the allegations and stay out of detention. Based on the totality of the circumstances, M.M.'s waiver of her right to counsel was not voluntary.
Moreover, from the record, M.M.'s waiver of her right to counsel was not intelligently and knowingly made as she was not adequately advised of her right to counsel or appropriately informed of the consequences of a decision to proceed unrepresented. Missouri courts have held that a valid waiver by a juvenile in a delinquency matter must be made with an apprehension of:(1) the nature of the charges; (2) the statutory offenses included within them; (3) the range of allowable punishments thereunder; (4) possible defenses to the charges and circumstances in mitigation thereof; and (5) all other facts essential to a broad understanding of the whole matter. Id. (citing State v. Schnelle, 924 S.W.2d 292, 296-97 (Mo.App. W.D.1996)). In D.L., the court was troubled by the juvenile court's failure to question the juvenile or his mother regarding their knowledge of various trial procedures or the rules of evidence or the extreme disadvantage of appearing pro se. Id. at 296. The court held that constitutional requirements for waiver of counsel by juveniles in proceedings should be no less than those required for waiver of counsel by adults in criminal actions. Id. at 291.
Similarly, in D.J.M., the Missouri Supreme Court held that there must be strict and literal compliance with Section 211.211, which states that a party is entitled to be represented by counsel in all proceedings and, when a petition is filed, the court shall appoint counsel for the child whenever necessary to assure a full and fair hearing. Section 211.211.1; Section *197 211.211.3; D.J.M., 259 S.W.3d at 535. In D.J.M., the court found that there was no evidence on the record to indicate that there was a discussion of D.J.M.'s right to counsel or a knowing and intelligent waiver of this right. Id. at 536. The juvenile court did not advise D.J.M. of the nature of the proceedings, the consequences of the finding, and possible defenses or dangers of proceeding without counsel. Id. As a result, the court determined that the juvenile court failed to strictly comply with Section 211.211 and that there was no valid waiver of counsel. Id.
As in D.J.M., there is nothing in the record to support a finding that M.M. knowingly and intelligently waived her right to counsel. The court's inquiry into M.M.'s decision to waive her right to counsel consisted of only two questions.
COMMISSIONER CLARKE: And you are not represented today? You're notYou don't have an attorney appearing with you today?
THE JUVENILE: No, ma'am.
COMMISSIONER CLARKE: But you would like to proceed in this case?
THE JUVENILE: Yes, ma'am.
The court then further explored her understanding of what she was doing after she made the decision to plead guilty and whether she had spoken to her mother about the decision to waive her right and proceed without counsel:
Q. And as far as entering a plea of guilty this morning, did you talk this over with your mother?
A. Yes, ma'am.
Q. Okay. And you understand that you don't have to plead guilty in this case? You understand that you don't have to plead guilty, that you could proceed with trial?
A. Yes, ma'am.
Q. And understand that if you have a trial, I'd have a trial proceeding before me, the [A]ttorney for the Juvenile Officer,... would have to present her case and her evidence. You would then have an opportunity to present an explanation or a defense. But rather than do that, you want to admit that thisthat this offense is what happened?
A. Yes, ma'am.
Apart from this brief colloquy, our review of the record indicates the waiver of counsel by M.M. was not preceded by a discussion of the nature of the charges, the range of allowable punishments, her possible defenses, or other facts essential to a broad understanding of the case. D.J.M., 259 S.W.3d at 536; D.L., 999 S.W.2d at 294. As such, M.M. was not properly informed of her decision to proceed unrepresented and the record does not support a finding of a knowing or intelligent waiver of counsel. Point I is granted. Since Point I is dispositive of this appeal, we need not address Point II.[3]

Conclusion
We reverse the decision of the court and remand this matter with instructions to vacate the judgment and for further proceedings.
GARY M. GAERTNER, Presiding Judge and PATRICIA L. COHEN, Judge, concur.
NOTES
[1] Unless otherwise indicated, all further statutory references are to RSMo 2000.
[2] The Attorney for the Juvenile Officer informed this court that a Respondent's brief would not be filed.
[3] Given the record before us, we note that the plea may have been deficient as well.