**STATE of Missouri, Respondent,**

v.

**Richard JOHNSON, Appellant.**

**No. 40046.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 21, 1979.

William J. Shaw, Public Defender, James W. Whitney, Jr., Clayton, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Michael P. Donegan, Asst. Attys. Gens., Jefferson City, James W. Whitney, Jr., Clayton, for respondent.

DOWD, Presiding Judge.

Richard Johnson was convicted by a jury of murder in the first degree in connection with robbery. He was sentenced to life imprisonment and appeals from this judgment entered on the verdict.

The appellant was charged with the murder of Gwynne Aarant, which occurred sometime in the evening of April 18, 1975. Appellant was the manager and maintenance man of the apartment building in which the victim was a tenant. Appellant lived with his wife in the same building in an apartment down the hall from the victim's apartment.

The victim was last seen alive by her next door neighbor at around 4:30 or 5:00 o'clock on Friday evening, April 18. The victim and her neighbor were engaged in a conversation in the hallway when the appellant joined them. The victim's neighbor then left for her own apartment, leaving appellant and the victim alone in the hallway. The victim was not seen for the rest of the weekend nor were there any signs of life in her apartment. A co-worker of the victim informed her employer that she had failed to show up for her car pool and work on Monday, April 21. Since this was very unusual for her, the victim's employer went to her apartment and after receiving no answer, he requested the apartment manager (appellant) to unlock and open the door.

Realizing that the apartment had been ransacked, the employer called the police.

A police officer of the Major Case Squad testified that there was no evidence of any forced entry or pry marks on the door or windows. The whole apartment had been ransacked. The victim was found lying face down on the bed, nude from the waist down. A piece of a pair of pantyhose was found wrapped around her neck. There was a large amount of blood on the bed under the upper side of her body along with a large number of checks and deposit slips lying underneath her.

The medical examiner determined that death was caused by strangulation and subsequent to the strangulation the victim was stabbed seven times in the chest. There was evidence of intercourse within a range of 24 hours before or after death.

It is at this point that the evidence adduced at trial becomes contradictory. Appellant admitted going into the victim's apartment on Thursday, April 17. When questioned on tape by police, appellant stated he went into the apartment to spray for bugs and did so along the baseboard about an inch from the wall. A laboratory examination of carpet samples found no residue of bug spray. At trial, appellant recalled the taped conversation with police but then stated he sprayed the ceiling for spiders. A similar contradiction between the taped conversation with police and his testimony at trial appears on the issue of whether the victim came home while he was in her apartment. Appellant also admitted in both his taped conversation and at trial that he went through the victim's drawers and through her cancelled checks on that Thursday.

Appellant further testified that he had sex with the victim, which she consented to, on Friday evening, April 18 but that he left her apartment before 6:00 p. m. with the victim in good health. He left the apartment complex about 6:45 p. m. and went bowling with relatives until around 11:00 when he picked his wife up from work. Appellant testified that they both went home, showered, and went to bed.

The testimony of appellant's wife reveals much more. She testified that after they got home, she observed the appellant go into the victim's apartment and return in about 20 minutes with a heavy duty electrical cord,[1] a car title, credit cards, and a driver's license with a picture she recognized to be that of the victim. She watched the appellant in another room burn and flush these items (except the cord) down the toilet. She testified he then cut the cord into little pieces and took her in his car and dumped these pieces along a highway.

Appellant's wife testified that on the following day, Saturday, April 19, she accompanied appellant to his mother's house. Appellant's mother showed her a ring he had given her. She had never seen his mother with this ring before. She was able to identify this ring from a picture which had been identified by other witnesses as a ring belonging to the victim.

Appellant's wife also testified that on the day after the body was found she again went with appellant to his mother's house. While in another room, she observed the appellant hide a knife on top of a cabinet in the kitchen. Appellant did not see his wife observing him as he put the knife on the cabinet. She testified that the knife was used to cut up the electrical cord. The medical examiner testified that the knife could have caused the chest wounds of the victim.

The appellant prevailed upon his wife not to give an account of what she observed by constantly threatening her life. His wife admitted lying in her statement to police on April 25. She continued to remain silent until fifteen months after the crime occurred. Her testimony was finally prompted by appellant shooting at her in the course of an argument.

Further evidence detrimental to appellant's position was the testimony of Ralph Williams, a recent acquaintance of appellant. Williams testified that in a conversation where no one else was present, the appellant admitted committing a murder in St. Louis.

The jury found the appellant guilty of murder in the first degree in connection with robbery and fixed punishment at life imprisonment.

Appellant's first point relied on is that the court erred in overruling his motion in limine to strike, or in the alternative to limit, the testimony of his wife. Appellant contends that the matters testified to were confidential communications protected by the marital relationship. This point is deficient for a number of reasons.

Without going into the merits of appellant's argument that this evidence was protected by the marital privilege, he has not properly preserved this point for appellate review. Appellant presented evidence in support of his motion in limine to strike or at least limit the testimony of his wife. This motion was overruled. When his wife testified at trial, appellant made no objection but cited as error in his motion for new trial both the denial of his motion in limine and the admission into evidence of statements made by appellant.

■ The principal issue: After a denial of a motion in limine is a timely objection at trial required to preserve the point for appellate review? This question is answered in the affirmative.

■ As a rule, the basis for a motion for new trial must be submitted to the trial court at the time the testimony is offered and, without such an objection, cannot be successfully urged on appeal. *State v. Washington*, 320 S.W.2d 565, 568 (Mo.1959).

■ A spouse waives the common law and statutory protection by failing to object when the other spouse testifies at trial. *State v. Bledsoe*, 325 S.W.2d 762, 766 (Mo. 1959) citing *State v. Hill*, 76 S.W.2d 1092, 1094 (Mo.1934). This case is distinguished from *State v. Euell*, 583 S.W.2d 173 (Mo. banc 1979). In that case, the defendant

---

1. The medical examiner testified that although the pantyhose found wrapped around the victim's neck could have caused the strangulation, a cord of this type could also have been used with the pantyhose obscuring any marks on the victim's neck.

objected that his ex-wife (she was his wife at the time of the altercation in question) was not a competent witness. *State v. Euell*, supra. In the case before us now, the only objection made to the testimony of appellant's wife was an overly broad motion in limine to strike or limit her testimony.[2] Neither such motion, nor the court's ruling on it, disencumbers appellant of his obligation to object in order to preserve the point. *State v. Beemer*, 538 S.W.2d 768, 771 (Mo. App.1976). Appellant made no objection at trial and therefore has no basis for any claim of error by the trial court. *State v. Rennert*, 514 S.W.2d 579, 580 (Mo.1974).

In similar situations, courts have held a denial of a motion in limine an insufficient basis for a claim of error when there was no timely objection to the testimony at trial. *State v. Savu*, 560 S.W.2d 244, 245 (Mo.App. 1976) (denial of motion to exclude evidence of other crimes). *State v. Parker*, 543 S.W.2d 236, 240 (Mo.App.1976) (denial of motion to suppress and exclude statements).

▪▪▪ Although appellant has not properly preserved this claim for appellate review, the court may, in its discretion, review the point under the plain error rule, Rule 27.20(c) VAMR. Rule 27.20(c) allows the court to consider on appeal plain error affecting substantial rights, though the alleged error is defectively preserved, when it deems that manifest injustice or miscarriage of justice has resulted. Before applying this rule, the court must find a "sound, substantial manifestation" and a "strong, clear showing" that injustice will result. *State v. Caffey*, 457 S.W.2d 657, 660 (Mo. 1970). Furthermore, appellant has the burden of proving that the error amounted to manifest injustice or miscarriage of justice. *State v. Richards*, 536 S.W.2d 779, 788 (Mo.

App.1976). A careful review of the record shows no clear showing that a manifest injustice or miscarriage of justice has resulted. Accordingly, this court will not review the point under the plain error rule.[3] This point is ruled against appellant.

Appellant also claims the court erred in permitting his wife to testify during the State's rebuttal that his brother had been convicted of murder in New York.[4] Appellant claims that this testimony was improper as rebuttal, was irrelevant and prejudicial and, if admissible at all, should have been offered in the case in chief.

On direct examination, appellant's wife testified that appellant made threats on her life. She stated she was afraid for her life and the life of her nine year old daughter and therefore gave the police a false story.

On cross-examination by appellant, his wife testified that her fear was based partially on her belief that she would be harmed by his family. Appellant's wife first testified, in response to questions by appellant's counsel, that she was afraid of his brother.

In an effort to show that his wife's fear was unreasonable, appellant testified he did not threaten her. He also produced family members as witnesses to testify that they had not threatened his wife.

On rebuttal, she testified she understood his brother had committed murder in New York and that it scared her. This evidence was offered to counter appellant's evidence that there was no reasonable basis for the fear.

▪▪▪ Rebuttal evidence must "explain, counteract, repel or disprove" evidence offered by the defendant. The trial court is

2. Appellant contends the court erred in overruling this motion. Actually, the trial judge did grant appellant's alternative request and did limit the wife's testimony to what she saw appellant do, excluding statements made by appellant, except for the threats.

3. Regardless, threats made to the wife cannot be considered confidential communications and are therefore not barred by § 546.260 RSMo 1969. The United States Supreme Court has stated that the privilege should be allowed only

when "marital confidence cannot otherwise reasonably be preserved." *Wolfle v. U. S.*, 291 U.S. 7, 17, 54 S.Ct. 279, 281, 78 L.Ed. 617 (1934). The threat itself refutes any reliance on confidence springing from the marital relationship and is therefore not privileged.

4. The wife testified that defendant's brother had murdered his wife and children in New York.

vested with considerable discretion as to the nature and extent of rebuttal testimony. *State v. Williams,* 442 S.W.2d 61, 65 (Mo. 1968). This discretion still remains even if the evidence more properly should have been offered in the case in chief. *State v. Adams,* 465 S.W.2d 536, 540 (Mo.1971). An appellate court will not reverse a case on the ground of improper rebuttal unless there is a clear abuse of discretion or the appellant's rights are prejudicially affected. *State v. Williams,* supra at 65.

■ The wife's testimony was clearly proper on rebuttal. Her testimony was directed at appellant's evidence to counteract or disprove it. *Williams,* supra at 65; *Glenn v. Stewart,* 167 Mo. 584, 67 S.W. 237, 239 (1902). We find no abuse of the trial court's discretion.

Also, recent cases have held that when a defendant brings a matter into a case by his own questions, he cannot claim error when the state presents evidence to clarify or explain that matter. *State v. Riles,* 581 S.W.2d 457, (Mo.App.E.D.1979); *State v. Matha,* 446 S.W.2d 829, 832 (Mo.1969); *State v. Holmes,* 419 S.W.2d 15, 17 (Mo. 1967). Appellant opened up this area on his cross-examination of his wife and therefore cannot now claim error in the State attempting to explain this issue. Appellant attempted to establish that his wife had no reasonable basis for her fear and thus question her motives for withholding her evidence. The State was merely attempting to refute this image fashioned by appellant. *State v. Mucie,* 448 S.W.2d 879, 887 (Mo. 1970).

■ Appellant's contention that his testimony was irrelevant and highly prejudicial is not well taken. The credibility of appellant's wife is of the utmost importance. The reasons for the false statement to police and withholding her evidence is highly relevant. Even if this evidence was prejudicial the testimony was indispensable for its legitimate purpose and therefore was properly admitted. *Daniels v. Dillinger,* 445 S.W.2d 410, 418 (Mo.App.1969). This point is ruled against appellant.

Appellant also claims the court erred in permitting the sequestered jury to suspend deliberations and eat dinner in a public restaurant, at which time several jurors had a drink. He claims that the trial judge, who was at a table across the dining room from the jurors, participated in the decision allowing several jurors to consume alcohol before dinner.

At a separate hearing before the trial judge, on appellant's motion for new trial, the evidence showed that prior to leaving for dinner the jury had taken a ballot with 10 jurors voting to convict and 2 abstaining. Before dinner, 6 jurors had one drink each but the two abstaining jurors did not drink. The jurors who did have a drink testified that it did not affect them. Although the sheriff gave permission to have a drink, some of the jurors did observe the trial judge sitting at a table across the room.

■ Appellant cites several out-of-state cases while the law in Missouri is well settled. Section 547.020 RSMo 1969 permits the court to grant a new trial "(2) When the jury . . . has been guilty of any misconduct tending to prevent a fair and due consideration of the case." *State v. Edmondson,* 461 S.W.2d 713, 724 (Mo.1977). However, the determination of whether the particular circumstances warrant a mistrial rests in the discretion of the trial court. *State v. O'Neal,* 436 S.W.2d 241, 246 (Mo. 1968). The fact that there was a possibility something prejudicial could have occurred is not enough to grant a new trial where the possibility is rebutted by other facts and circumstances. *State v. Bayless,* 362 Mo. 109, 240 S.W.2d 114, 123 (1951).

■ It was incumbent upon appellant to show that the mind of a juror was affected by the alcohol or suffered from some degree of intoxication. *State v. Washburn,* 91 Mo. 571, 4 S.W. 274, 276 (1887); *State v. West,* 69 Mo. 401 (1879); *State v. Taylor,* 134 Mo. 109, 35 S.W. 92, 105 (1896); Annot., 7 A.L.R.3d 1040 (1950).

■ The trial judge held a hearing in which the jurors were examined by both counsel and the court. The jurors testified

not to impeach their verdict but to support and uphold it and therefore their testimony was properly received. *State v. Westmoreland*, 126 S.W.2d 202, 204 (Mo.1939). No evidence was presented to show any intoxication of a juror. *State v. Selman*, 433 S.W.2d 572, 577 (Mo.1968). The facts reveal no prejudice to the appellant and support the trial court's exercise of discretion in denying a mistrial. *State v. Edmondson*, supra at 724. Therefore, this point is ruled against appellant.

Finally, appellant asserts that the trial court committed error in failing to obtain a written waiver of counsel from him pursuant to § 600.051 RSMo Supp. 1976.

Section 600.051, supra, allows the trial judge to permit a waiver of counsel in a criminal trial if he determines that the waiver was knowledgeably and intelligently made and if the waiver is signed by the defendant. Before deciding if this statute was followed, the principal issue is whether there has, in fact, been a waiver. We think not.

 The appellant requested to try his case as his own counsel but with the aid of an attorney. The decision allowing appellant to participate in his trial when he was counsel rests within the discretion of the trial court, *State v. Velanti*, 331 S.W.2d 542, 546 (Mo.1960), because he has no 6th Amendment right to participate as co-counsel. *U.S. v. Wolfish*, 525 F.2d 457 (2nd Cir. 1975). Such dual representation does not constitute either a waiver or an attempted waiver. *State v. Burgin*, 539 S.W.2d 652, 654 (Mo.App.1976). Since appellant did not waive this right to counsel but proceeded, in the court's discretion, as co-counsel with an attorney's assistance, a written waiver was not necessary. *State v. Burgin*, supra.

Furthermore, the record reveals that appellant did have the active assistance of counsel throughout the trial. Appellant's co-counsel caused a subpoena to be issued, objected at trial several times, conferred with appellant during trial, made a motion for acquittal and examined appellant, appellant's wife and even the jurors in a post-trial hearing. There is no evidence that the appellant presented his defense on his own.

The only case cited by appellant, *Peterson v. State*, 572 S.W.2d 475 (Mo. banc 1978), is dispositive on this issue. That case concerned a guilty plea followed by a conviction and sentencing in a situation where the defendant had no assistance of counsel at all. This is not the case here. Appellant had the aid of counsel and took advantage of it throughout the trial. Appellant never waived his right to counsel and therefore, a written waiver form was not required. This point is ruled against appellant.

Affirmed.

STEWART and CRIST, JJ., concur.