**STATE of Missouri, Respondent,**

v.

**Raymond D. WHITE, Appellant.**

**No. WD 57135.**

Missouri Court of Appeals,
Western District.

Feb. 27, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 1, 2001.

Application for Transfer Denied
June 26, 2001.

Vanessa Caleb, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Karen L. Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

Before Presiding Judge SMART, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant Raymond D. White appeals from his convictions for assault in the first degree, in violation of Section 565.050 RSMo 1994, and armed criminal action, in violation of Section 571.015 RSMo 1994. Following a trial by jury in the Circuit Court of Jackson County, Missouri, the Honorable Thomas C. Clark, presiding, Mr. White was sentenced to concurrent terms of 15 years imprisonment for first degree assault, and 10 years imprisonment for armed criminal action.

Mr. White contends on appeal that by requiring him to represent himself *pro se* in his trial by jury, the trial court denied his rights to counsel, a fair trial, and due process of law, in that the court failed to secure from him a written waiver of his right to counsel, as required under Section 600.051 RSMo 1994. Alternatively, Mr. White argues that he did not make a knowing and intelligent waiver of counsel, as required under the Sixth Amendment of the United States Constitution, when, on the same morning that his "standby counsel" was released, he was required to proceed to trial without further opportunity to hire counsel and without a new express or implied waiver of counsel at that time. The State concedes that no written waiver of counsel was secured from Mr. White, but argues that Mr. White nevertheless made a knowing and intelligent waiver of counsel because the record shows that the court below thoroughly apprised Mr. White of the relevant facts necessary to make a knowing waiver under Section 600.051, and Mr. White still proceeded to trial without counsel.

We find that, while Mr. White was apprised of the contents of Section 600.051, and ultimately represented himself at trial, the record also shows that he appeared on the day of trial reasonably expecting the assistance of standby counsel to assist him in his defense, and was not given any time to hire other counsel or prepare for trial without the assistance of standby counsel once the court permitted standby counsel to withdraw on the morning of trial, as required by prior decisions of this court. For this reason, we reverse and remand for a new trial.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 1997, Mr. White was charged by information with one count of assault in the first degree and one count of armed criminal action. Mr. White was arraigned on these charges on October 2, 1997, and for a few months after the arraignment Mr. White was apparently rep-

resented by the state public defender's office. On February 10, 1998, however, public defender Todd Schultz filed an application to withdraw from representing Mr. White because Mr. White had been able to post a rather substantial $75,000 bond, and so was financially ineligible for public defender representation pursuant to Section 600.086 RSMo 1994.

The parties appeared before Judge Clark on February 25, 1998, for a hearing on Mr. Schultz's application to withdraw. The court asked Mr. Schultz to explain to Mr. White why the public defender's office was seeking to withdraw as Mr. White's attorney. Mr. Schultz told Mr. White that he did not qualify financially for representation by the public defender's office, in part because he had posted such a substantial bond, but also because he was employed, making $7.00 per hour. Mr. White said that he understood Mr. Schultz's explanation, and could offer no reason why the public defender's office should not be allowed to withdraw from representing him. The court granted Mr. Schutz's motion to withdraw.

The court then informed Mr. White that his trial was set on the docket for March 16, 1998, approximately three weeks later, and, as set forth in further detail *infra*, extensively warned Mr. White about the dangers of proceeding *pro se* and the benefits of retaining counsel. On March 16, 1998, Mr. White appeared before the court and gave Judge Clark the business card of a local attorney, on the back of which was written, "I will be representing [Mr. White] on this case. However, I [was] just retained Friday afternoon, 3–13 and am in Division 28 this morning for a felony plea. Please continue this if you would. Thank you, [signed]." The court continued the matter that day, but when pretrial conferences were held on March 23, 1998, and May 7, 1998, Mr. White once more appeared without legal representation, as the counsel he thought he had retained decided not to represent him.

On June 8, 1998, the parties again appeared before the court. As set out in further detail *infra*, Mr. White appeared without an attorney, and during this hearing, the court engaged in a colloquy with Mr. White, reviewing with him the provisions of Section 600.051, which contains disclosures that must be made to a defendant who desires to waive counsel. Mr. White indicated that he had been prepared to defend himself because he thought the trial would be held before the court. Upon learning that the trial would be held before a jury, Mr. White indicated that he did want to retain counsel. Accordingly, and with admirable patience, the court again continued the case, with admonitions that this would be the last continuance and that Mr. White should be prepared to proceed with or without counsel at the next trial setting.

The parties next appeared before the court on August 21, 1998, and Mr. White again appeared without an attorney. The court again engaged in a lengthy colloquy with Mr. White during which it essentially reminded Mr. White of the many warnings he had been given concerning the dangers of representing himself, and Mr. White indicated that he understood these warnings. The court ultimately told Mr. White that he would be allowed to represent himself, but that the court would appoint Mr. Schultz of the public defender's office as "standby counsel" to assist him in his defense, and would continue the case for this purpose. Mr. White agreed to this course of action, and the court continued the case to December 1998 so that Mr. White and his standby counsel, Mr. Schultz, could prepare for trial.

When Mr. White again appeared before the court on December 7, 1998, for trial,

his standby counsel, Mr. Schultz, filed an application to withdraw as standby counsel on the ground that Mr. White still was not indigent, and thus still did not qualify for even "standby" representation by a public defender. The court denied the motion, but continued the case so that Mr. Schultz could file a writ in this Court to determine whether the trial court had the power to appoint a public defender to remain by Mr. White's side as his standby counsel absent proof of indigence. The next day, December 8, 1998, the court indicated it believed this court would require it to dismiss Mr. Schultz as counsel on the basis that, as Mr. White did not qualify financially for public defender representation, the public defender could not be required to represent him as standby counsel either. The trial court accordingly allowed Mr. Schultz to withdraw. Despite the fact that the court had just dismissed the standby counsel whom Mr. White had believed would assist him at trial, the court did not give Mr. White an opportunity to obtain other counsel or to further prepare so that he was ready to proceed *pro se,* nor did it again go over the provisions of Section 600.051. Rather, the court required Mr. White to proceed to trial *pro se* that very day.

While the court did a commendable job of assisting Mr. White in understanding how to represent himself at trial, Mr. White presented no evidence in his defense, and did little in the way of cross-examination, and, at the close of evidence, instructions, and arguments, the jury found him guilty of first degree assault, in violation of Section 565.050 RSMo 1994, and of armed criminal action, in violation of Section 571.015 RSMo 1994. In sentencing Mr. White, the trial court found him to be a prior and persistent offender, in accordance with Sections 558.016 and 557.036 RSMo 1994, and sentenced him to concurrent terms of 15 years on the assault count, and 10 years on the armed criminal action count. This appeal followed.

## II. WAIVER OF RIGHT TO COUNSEL

■ Mr. White does not contest the sufficiency of the evidence produced at trial to support his conviction, nor does he raise any allegations of error concerning the trial itself. Mr. White contends, rather, that the trial court erred in allowing him to proceed to represent himself *pro se* in his trial by jury because the court below failed to secure a written waiver from him of his right to counsel, as required under Section 600.051. He also asserts that his waiver of counsel was not "knowing and intelligent," as required under the Sixth Amendment of the United States Constitution, because he believed from August 21, 1998 until December 8, 1998, the day of trial, that he would have the assistance of standby counsel at trial, and, therefore, the court should not have forced him to trial after dismissing his standby counsel without affording him further opportunity to obtain counsel, and that the failure to do so violated his Sixth Amendment right to counsel.

As we noted in *State v. Schnelle,* 924 S.W.2d 292 (Mo.App. W.D.1996):

The Sixth Amendment of the Constitution of the United States provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence.' When a defendant waives this right, he must knowingly and intelligently waive the protection of this amendment. *Johnson v. Zerbst,* 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *State v. Gilmore,* 697 S.W.2d 172, 174 (Mo. banc 1985)....

Whether a waiver is made intelligently and knowingly depends on the 'particular facts and circumstances surround-

ing the case, including the background, experience, and conduct of the accused.' *State v. Hunter*, 840 S.W.2d 850, 858 (Mo. banc 1992). The defendant's knowledge of all relevant facts 'need not appear in the trial record to support a finding that the waiver of counsel was proper,' *id.*, and no specific litany is required. Nonetheless, the record must show that a defendant 'was apprised of the difficulties of self-representation in terms sufficient to enable him to intelligently decide which course to follow. . . . *Schnelle*, 924 S.W.2d at 296.

■ To provide objective assurance that a defendant's waiver of his or her right to counsel is indeed "knowing and intelligent," *State v. Wilkerson*, 948 S.W.2d 440, 443 (Mo.App. W.D.1997), Section 600.051 requires that a waiver be put in writing:

1. Any judge of a court of competent jurisdiction may permit a waiver of counsel to be filed in any criminal case wherein a defendant may receive a jail sentence or confinement if the court first determines that defendant has made a knowledgeable and intelligent waiver of the right to assistance of counsel and the waiver is signed before and witnessed by the judge or clerk of the court, providing further that the waiver contains at least the following information which the defendant has read or which has been read to the defendant before signing thereof:

(1) That the defendant has been charged with the offense of . . . (nature of the charge must be inserted before signing);

(2) That the defendant has a right to a trial on the charge and further that the defendant has a right to a trial by a jury;

(3) That the maximum possible sentence on the charge is . . . imprisonment in jail and a fine in the amount of . . . dollars or by both imprisonment and fine. That the minimum possible sentence is . . . imprisonment in jail or by a fine in the amount of . . . dollars or by both such confinement and fine.

(4) That the defendant is aware that any recommendations by a prosecuting attorney or other prosecuting official are not binding on the judge and that any such recommendations may or may not be accepted by judge;

(5) That if defendant pleads guilty or is found guilty of the charge, the judge is most likely to impose a sentence of confinement;

(6) That, if indigent, and unable to employ an attorney, the defendant has a right to request the judge to appoint counsel to assist the defendant in his defense against the charge.

■ Generally, the use of the written waiver of counsel prescribed in Section 600.051 is mandatory, and failure to use the written form as mandated is considered reversible error. *Peterson v. State*, 572 S.W.2d 475, 477 (Mo. banc 1978); *State v. Wilkerson*, 948 S.W.2d at 443. Here, the State concedes—and the record confirms—that Mr. White specifically refused to sign the written waiver of counsel form proffered him by the trial court once he learned in June 1999 that trial would be to a jury and that he was never thereafter asked to sign such a form.

The fact that no written waiver was obtained is not dispositive, however, for the Missouri Supreme Court has expressly recognized two exceptions to the stringent requirement that a written waiver be signed by the defendant, one of which is relevant here. In *May v. State*, 718 S.W.2d 495 (Mo. banc 1986), the Supreme Court declared that, despite the provisions of Section 600.051, securing a written waiver of counsel from a defendant is not mandatory to prove that a defendant's waiver

of counsel was "knowing and voluntary" when "the statutory waiver is presented to the defendant in open court and read into the record, and he maintains his purpose of conducting his own defense, while explicitly refusing to sign." *Id.* at 497. The Court's rationale in carving out this exception was that it "accords with the purpose of [Section] 600.051, which is to provide objective assurance that the defendant's waiver is knowing and voluntary. Here the trial court did all that was reasonably possible to obtain such assurance." *Id.*

Similarly, in the case at bar, it appears that the learned trial judge went to great lengths to "provide objective assurance" that Mr. White's waiver of counsel was knowing, intelligent, and voluntary. In particular, when the parties appeared before Judge Clark on February 25, 1998, the court informed Mr. White that his trial was set on the docket for March 16, 1998, approximately three weeks later. The court told Mr. White that he needed to contact an attorney to represent him in the matter, as he was charged with "serious" crimes, including a class A felony and armed criminal action. The court apprised Mr. White of the potential range of penalties for conviction of these crimes, telling him that assault in the first degree carries a potential sentence of "10 to 30 years to life," and armed criminal action, "3 years in jail and up, unlimited I think." The court concluded its admonitions by telling Mr. White that "you risk spending the rest of your life in jail if the jury comes back and finds you guilty and recommends that punishment. So, you need to take this seriously and go find a lawyer." After dispensing this advice, the court told Mr. White that, while it probably would not "press" him to trial on March 16, 1998, Mr. White nonetheless needed to appear that day, and that he should probably retain a lawyer to enter an appearance on his behalf.

Mr. White appeared three more times before the court in the ensuing months, on March 16, March 23, and May 7, each time failing to retain counsel. On June 8, 1998, the parties again appeared before the court and Mr. White again appeared without an attorney. Judge Clark noted for the record that this was Mr. White's "third or fourth" appearance without an attorney, and professed confusion as to why Mr. White had yet to retain counsel. Mr. White explained that the attorney he had retained before the March 16, 1998 hearing "ran off with [his] money," and then he said "I just—I just try to do my best on my own—I don't trust nobody." Judge Clark then said that "we've got to do a couple of things here if you're going to represent yourself," noting that "[t]here's a statute that requires us to inform you about the consequences of your waiver of counsel." The record then reflects approximately 22 pages of transcript in which Judge Clark conducted a colloquy with Mr. White, discussing thoroughly all of the provisions of Section 600.051. Intermittently throughout this discussion, Mr. White acknowledged that he understood all of the information imparted to him.

There was, however, some confusion between Judge Clark and Mr. White when Judge Clark informed him, in accordance with Section 600.051.1(2), that he has "a right to a trial on the charge[s] and further that [he] has a right to a trial by jury." Upon apprising Mr. White of this right, Judge Clark explained, "what I'm telling you is, you're entitled to a trial by a jury and that's what you're going to get because that's what you want, right?" During the exchange that followed, however, it is not at all clear that a trial by jury was, indeed, what Mr. White wanted:

> DEFENDANT WHITE: I'm going in front of a jury?

THE COURT: Yeah, yeah.

DEFENDANT WHITE: Oh, I thought it was just a regular trial.

THE COURT: Well, that's a regular trial. Bluntly, I'm not going to try the case. If you want a—if you want a judge to try the case, then I'm going to disqualify myself. It's I think— here's the deal. We'll do this in front of a jury for one good reason and that's this—twelve persons of this community can better sit in judgment of you than I can singularly.

DEFENDANT WHITE: And why is that?

THE COURT: Because I think that— they represent the conscience of the community. It may be that you have a defense that they may agree with. It may—and a lawful defense, at that, I don't know.

Mr. White then further manifested his apparent confusion concerning the type of trial that he faced, saying:

DEFENDANT WHITE: First there was a trial. How—when did it become a jury trial?

THE COURT: Well, that's what a criminal case is, it's a jury trial.

DEFENDANT WHITE: Well, you've got two different trials, a regular trial and a jury trial, correct?

THE COURT: Well, do you want to try this in front of a judge?

DEFENDANT WHITE: No, I was just saying, am I correct? . . .

THE COURT: Well, see, in the jury,— the judge does not sit in judgment of you in a jury trial. . . .

DEFENDANT WHITE: I know, but . . . a jury trial is where I have 12 people, correct? . . . A regular trial is just you, correct? . . .

THE COURT: Most—see, most of the time, Mr. White, felony convictions that result in penitentiary imprisonment are tried in front of a jury. . . . Now, if you want to do it in front of a judge, I'll let you go in front of a judge. . . .

It then appears, from Mr. White's subsequent statements, that he had been laboring under the misconception that the case would be tried before the court when he initially stated that he wanted to represent himself:

DEFENDANT WHITE: But, I don't— hey, I don't know—nothing I just thought it was just a regular trial, that's all. If it's a jury trial, then hey—I mean, I'm not going to sign this then. I thought it—

THE COURT: You don't have to sign it.

DEFENDANT WHITE:—I thought it was just in front of you. But, if it's in front of 12 people, I'll get a lawyer. . . .

The court then approved of Mr. White's resolve to retain a lawyer, but at the same time admonished him:

THE COURT: Well let me—let me tell you, that's fine. I've given you three or four chances to do that and I'm not going to do a fifth.

DEFENDANT WHITE: You ain't got to.

THE COURT: What I'm going to do— what I'm going to do now is this [ ], I'm going to read all this material to you, and this will encourage you to get a lawyer, I think. But, the next time you come back, you're going to be here with a lawyer or ready to defend yourself and I'm not going to put it off. . . .

DEFENDANT WHITE: Well, I'm not going to sign this, because it's just waiving my rights to represent myself. So, I'm not going to sign it.

Ms. McGowan, the prosecutor in the matter, then stated that the State would not waive the jury trial, effectively ending any further discussion of trying the case to the court.

Upon discovering that the case was going to be tried before a jury rather than before the court, Mr. White declared that he was "going to have to" retain a lawyer and refused to sign the "waiver of counsel" form proffered him by the court. In an effort to ensure that Mr. White understood the importance of retaining counsel, Judge Clark then proceeded to again describe at length to Mr. White the procedural progression of a criminal trial, and emphasized at several points that proceeding *pro se* was an avenue "fraught with peril" for someone like Mr. White, who is unsophisticated in the law. Judge Clark pointed out that Mr. White's opponents would be experienced attorneys for the State, and that his chances of success against them would be minimal. He again cautioned Mr. White to retain the services of an attorney, and before concluding, stated: "[B]luntly, this is your last shot at getting a lawyer. Next time you come in, we're going to bring the jury in and we'll have presentation of evidence, you'll get to do your part and then, we'll let the jury make a decision on it. Follow me?" Mr. White responded "yes." Judge Clark set Mr. White's case for trial on August 31, 1998, and concluded the hearing.

The parties next appeared before the court on August 21, 1998. Despite Mr. White's statement that he would retain an attorney, and despite Judge Clark's extensive efforts to inform him of the dangers of self-representation, he again appeared without counsel. The court noted the number of continuances that Mr. White had already been granted, and asked Mr. White whether he remembered that the court had warned him of the dangers of

representing himself. Mr. White said he remembered these conversations. The court again warned Mr. White at length that, if he chose to represent himself, he would be facing experienced opposition, and that his likelihood of success was minimal. Mr. White indicated that he understood.

Had Mr. White's case indeed proceeded to trial at this point in the proceedings, we would have no misgivings about finding, in accordance with *May* and its progeny, that Mr. White had impliedly waived his right to counsel, for Judge Clark had carefully and fully apprised him of the disclosures required under Section 600.051 on June 8, 1998, and had warned him repeatedly of the dangers of representing himself, on that date and many other dates.

At the August 21, 2000, hearing, however, rather than telling Mr. White he should be ready to proceed *pro se* on August 31, 2000, Judge Clark offered to appoint a public defender "to assist Mr. White in [his] own defense." Mr. White agreed to the appointment of standby counsel in the following exchange with the court:

> THE COURT: And, now, you've asked and I've told you before, I'm going to let you be your own lawyer, but I tell you what I think I'm going to do—I'm going to appoint a public defender to assist you in your own defense. And, I'm going to try to do that in the next, in the coming few days. And, I'm asking that person to contact you— I'm going to ask you to contact them or him or her, okay, so that you can correlate your defense with someone who is hopefully as skilled and experienced as the prosecutor, okay? See what I'm saying?
>
> MR. WHITE: Yes.
>
> THE COURT: I hope that's not offensive to you.
>
> MR. WHITE: No.

THE COURT: We've talked about this before.

MR. WHITE: Right.

THE COURT: But, I think I should do that so that you'll have some help if you need it in trying your case and defending your rights and interests and liberty, okay?

MR. WHITE: Yeah.

Mr. White did nothing to retain private counsel during the months between the August 21, 1998, hearing, and the December 7, 1998, trial date, and at the December 7, 1998, hearing, he indicated that this was because of the appointment of standby counsel for him at the August 21, 1998 hearing, and that he had wanted the assistance of standby counsel, stating:

THE COURT: Mr. White, have you had a chance to read Mr. Schultz's motion [to withdraw]?

MR. WHITE: Yes.

THE COURT: What do you say?

MR. WHITE: I suggest that he be a counselor.

THE COURT: I'm sorry?

MR. WHITE: I suggest he standby counsel. I would like to have him—I would like him to be my standby counsel.

After some argument by Mr. Schultz that he should nevertheless be allowed to withdraw as Mr. White's standby counsel, Mr. White observed that it was on the court's advice that he intended to rely on standby counsel, despite his declared intentions to conduct his own defense:

MR. WHITE: [I]t was your—it was your opinion that I have a standby counselor. You recommended that at that hearing—it wasn't me.... I didn't say that I couldn't get another lawyer and I didn't want to try to.... I didn't say that I wouldn't, though, try to get another lawyer.

The court then denied Mr. Schultz's motion to withdraw, and continued the case until the next day pending Mr. Schultz's application to this Court for a writ, to resolve whether the trial court had the authority to require the public defender to remain as standby counsel despite the fact that Mr. White did not qualify financially for public defender assistance.

█ The next day, December 8, 1998, the trial court granted Mr. Schultz's motion to withdraw as standby counsel. It was at this point that the trial court erred. For, in its effort to assist Mr. White by providing standby counsel for his assistance, and by persuading Mr. White to accept and rely on such assistance, the court in effect persuaded Mr. White to withdraw his prior implied waiver of counsel. This necessarily follows from the fact that under Missouri law "one who has 'standby' counsel or 'hybrid' counsel has the aid and assistance of an attorney and has not actually waived counsel." *State v. Hunter*, 840 S.W.2d 850, 860 (Mo. banc 1992), *citing with approval, State v. Johnson*, 586 S.W.2d 437, 443 (Mo.App.1979). Typically, this principle is invoked to *deny* relief in cases in which a defendant enjoyed the assistance of "hybrid" or "standby" counsel throughout his trial, but then alleges on appeal that the trial court erred in failing to secure from him a written waiver of counsel. *See State v. Yardley*, 637 S.W.2d 293, 296 at n. 2 (Mo.App. S.D. 1982); *State v. Tyler*, 587 S.W.2d 918, 923 (Mo.App. W.D.1979); *Johnson*, 586 S.W.2d at 443. In such cases, Missouri courts have specifically held that there was no error in failing to secure a written waiver of counsel from the defendant, because defendant in fact did not fully waive counsel in that he employed the aid and assistance of an attorney throughout trial while at the same time "conducting his own de-

fense." *Hunter,* 840 S.W.2d at 857, 860; *Johnson,* 586 S.W.2d at 443.[1]

There is a necessary corollary to the principle that there has been "less than full waiver" of a defendant's right to counsel in cases in which defendant was granted and accepts the assistance of appointed "standby" counsel at trial, however. Because, under *Hunter,* the presence of standby counsel at trial is deemed "assistance of counsel," necessarily precluding a defendant's claim that he was required against his will to waive counsel and proceed *pro se,* justice requires that when defendant is involuntarily deprived of standby counsel, he must be afforded all the protections given one who has been involuntarily deprived of the full assistance of retained or appointed counsel and forced to proceed *pro se.* Otherwise, a defendant who had been offered and had accepted standby counsel, and who had relied on the aid of standby counsel as a reason not to retain private counsel or to personally research legal procedure, would be unfairly prejudiced if forced to unexpectedly go to trial *pro se* immediately upon withdrawal of his standby counsel.

■ Where a defendant's regular counsel has withdrawn or a defendant otherwise finds himself or herself in the position of appearing *pro se,* "it is essential that a

defendant be advised of the difficulties of proceeding without counsel while there is still time to choose whether or not this right should be waived." *State v. Schnelle,* 924 S.W.2d at 297. In *Schnelle,* defendant appeared without representation before the trial court on June 20, 1994, to face several charges, including first degree assault. The court determined that very day that defendant did not qualify for public defender assistance, and, upon apprising defendant of the difficulties of representing himself, asked defendant if he was prepared to proceed *pro se. Id.* at 294–95. Defendant said he was not prepared to do so, but the court nonetheless required him to represent himself, despite his repeated requests for continuances to give him time to secure counsel. *Id.* at 295–296. Defendant was convicted on all counts. *Id.* at 296.

We noted in *Schnelle* that, in order to show that a waiver was knowing and intelligent, the trial court must have made a record demonstrating: "(1) that the defendant *timely understood that he would have to represent himself at trial if he failed to hire counsel;* and (2) that the defendant was adequately informed about the nature of the charges against him, the severity of the sentences he could receive, and the type of the defenses he could offer, *prior to the time that he waived counsel." Id.* at

1. Judge Smart, in his dissenting opinion, effectively suggests that cases prior to *Hunter* held only that a defendant is still considered to be represented by counsel if defendant's standby counsel takes an active role. We disagree. Neither *Hunter* nor any of the cases it relies on recognize two levels of standby counsel one advisory, one active. They simply say that if defendant is afforded standby counsel, then defendant has not waived counsel. In any event, until trial begins, and defendant learns how difficult it is to try a case, it cannot be predicted how active a role standby counsel will be asked to take.

Judge Smart implicitly criticizes *Hunter's* conclusion that representation by standby

counsel can adequately substitute for representation by appointed or retained counsel for Sixth Amendment purposes. While we too have some concerns about whether standby counsel can adequately fill the role of retained or appointed counsel for purposes of determining whether a waiver of counsel has occurred, and while we are not aware of other courts which have determined that no waiver of counsel occurs where standby counsel is appointed, that issue is not before us. Inasmuch as *Hunter* is the most recent Missouri Supreme Court precedent on this issue, we are required to follow it.

298 (emphasis added). In reversing the defendant's conviction, we stated that "we cannot say that Mr. Schnelle should have known when he appeared without counsel on the day of trial that he would be required to go to trial *on that day* regardless of whether he qualified for assistance from the public defender." *Id.* at 298–99. Because there had been no attempt to secure a waiver of counsel from the defendant until the morning of trial, and because defendant indicated that he continued to desire counsel, we concluded that his purported waiver of counsel was not "knowing and voluntary," as required under the Sixth Amendment. *Id.*

Here, similarly, it is clear that Mr. White did not "timely under[stand] that he would have to represent himself at trial if he failed to hire counsel," in that he appeared thinking that he would benefit from the assistance of appointed "standby" counsel at his trial. The trial court told him at the August 21, 1998, hearing that he would have such assistance. Although Mr. White was apprised of the difficulties of defending himself and of all disclosures required under Section 600.051 many months before he appeared to defend himself on December 8, 1998, thereby satisfying the second prong of the test set forth in *Schnelle,* the record shows that he did not know that his appointed "standby counsel," upon whom he intended to rely for advice during trial, would not be present to assist him in his defense.

Further, when told that Mr. Schultz wanted to withdraw, Mr. White informed the court that he wanted Mr. Schultz to continue to act as standby counsel, and did not want him to withdraw, nor did he want a delay in his trial. When the judge nonetheless determined that Mr. Schultz could not be required to represent Mr. White as standby counsel since Mr. White did not qualify for appointment of a public defender, and the court was thus forced to permit

Mr. Schultz to withdraw, the court should have treated the situation the same as it would have treated a situation in which a retained or appointed counsel had been permitted to withdraw on the day of trial against the wishes of his or her client, and allowed Mr. White time to find substantial counsel. For this reason, since Mr. White had not made a full, voluntary, and knowing waiver of standby counsel before the day of trial, it was "incumbent on the trial court" to give Mr. White "a further reasonable opportunity to hire counsel." *Schnelle,* 924 S.W.2d at 299.

Immediately after dismissing Mr. Schultz, the court stated: "Now, I think what I need to do is have the jury panel brought up and we need to get on with selecting a jury to sit in judgment on the case." The clerk went to summon the panel, and the court and the prosecutor explained some procedural matters concerning voir dire to Mr. White. The court then turned to Mr. White and, while waiting for the panel to arrive, said to him, "And one last comment—you are acting as your own attorney and this is by your own choice," to which Mr. White responded "okay." The judge's "comment" was just that; it did not constitute a question inquiring whether Mr. White wanted to proceed without counsel, nor did it inform him that he could at that point request an opportunity to hire counsel. In light of the court's prior admonitions to Mr. White in August that no more continuances would be permitted for him to obtain counsel, he could well have believed that the judge was simply informing him that he was going to have to act as his own counsel and that this was the result of his own choice to have only standby counsel, who had been permitted to withdraw. The case then proceeded to trial.

This was error. The court should not have required Mr. White to proceed to trial immediately after Mr. Schultz with-

drew, without first informing Mr. White that he would have the right to hire other counsel if he so desired, and without obtaining a new, knowing and intelligent waiver of his right to standby or retained counsel if Mr. White chose to again proceed without counsel.

For these reasons, we reverse Mr. White's conviction and remand for a new trial. Prior to trial, if Mr. White again fails to qualify for appointed counsel, he should be given a new and adequate opportunity to either retain counsel, or to make a full, voluntary, and knowing waiver of his right to counsel.

Judge ELLIS, concurs.

Presiding Judge SMART, dissents in separate opinion.

SMART, Judge, dissenting.

I dissent from the opinion of the majority because I believe that the record shows that Mr. White waived his right to proceed without counsel.

Appellant White was warned repeatedly by the court of the danger of representing himself. On his fourth appearance without counsel before the trial court, the court explained Section 600.051 to Mr. White.

The court presented him with a formal waiver form and explained to White what he would have to do if he chose to represent himself. The court also again explained the dangers of undertaking to represent himself. White, upon learning that the case would be a jury trial and not a bench trial[1], stated that he would not sign the waiver, but that instead he would get a lawyer. The court told Mr. White that he had already been given three or four chances to get an attorney. The court told Mr. White that the next time he came back, he would either have to have a lawyer or be ready to defend himself. White said he understood what he would have to do if he represented himself.

When White returned in August, ten days before the scheduled trial date, White did not have counsel. He was planning to represent himself. The court at that point tried to assist him by appointing "standby counsel" (that is, counsel functioning solely as an advisor). Having counsel limited to an advisory role was not equivalent to having representation by counsel.[2] When the public defender moved to withdraw as standby counsel on December 7, 1998, the morning trial was scheduled, White objected to continuing the case for even a week

---

1. The defendant's choice to waive a jury requires the consent of the court. Mo. Const. Art I, section 22(a); *State v. Goree*, 762 S.W.2d 20, 21–22 (Mo. banc 1988).

2. The majority mentions *State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992) and *State v. Johnson*, 586 S.W.2d 437 (Mo.App.1979) as cases indicating that having standby counsel amounts to having representation by counsel. The language related to "hybrid counsel" does support that proposition; however, "hybrid counsel" is not the same as merely advisory counsel. In *Hunter*, the defendant elected to "fire" counsel as to decisions relating to control of the matter because he wished to plead guilty against counsel's advice, but counsel remained and continued to participate as an active counsel. The court held it was not plain error to fail to obtain a formal

waiver of counsel pursuant to? 600.051, noting that the courts have held that where a defendant has "hybrid" counsel, the requirements of? 600.051 are inapplicable. *Id.* at 860.

In *Johnson*, one of the cases cited in *Hunter* for the proposition that no formal waiver is required in the case of hybrid counsel, counsel took an active role in the proceedings as a sort of co-counsel in addition to providing advice. Accordingly, the court held there was no waiver. *Johnson*, 586 S.W.2d at 443. Other cases cited in *Hunter* were *State v. Tyler*, 587 S.W.2d 918 (Mo.App.1979), *State v. Edwards*, 592 S.W.2d 308 (Mo.App.1979); and *State v. McGee*, 781 S.W.2d 161 (Mo.App. 1989). In *Tyler*, *Edwards*, and *McGee*, the defendant in each case had counsel available for whatever degree of assistance the defen-

to determine whether the public defender could serve as standby counsel.

> Defendant White: I don't want it to go a week.
>
> The Court: Okay.
>
> Defendant White: I mean, because its been what, seven, eight, months. This case is what, a year and two months old?
>
> [Ms. Broadnax, White's girlfriend]: Uh-huh, three months.
>
> Defendant White: Three months, two-three months. And I feel that we should be in trial by now.

After Mr. Schultz was dismissed as standby counsel the next morning, December 8, the court summoned a jury panel. While waiting for the arrival of the panel, and after discussing where the jury would sit, the court gave White another chance to ask for a continuance to get new counsel.

> The Court: Okay? And one last comment? you are acting as your own attorney and this is by your own choice.
>
> Defendant White: Okay.

The prosecution evidence at trial showed that the charges arose out of a dispute between White's girlfriend, Ms. Broadnax, and Anthony Carter, the next door neighbor. White was charged with shooting Carter in the face, and then, after Carter ran down the street, shooting him again in the shoulder. White presented no evidence in his own behalf, but he did cross-examine the prosecution witnesses, and did argue the case to the jury.

The majority is correct that it is very clear from the record that White desired to be represented by Schultz, and that if he could not have Schultz represent him,

he would have liked to use Schultz as advisory counsel. White's lack of representation presented a difficulty both for the accused and for the court, and the court had encouraged White to apply again for public defender eligibility. However, the fact that neither counsel nor advisory counsel were legally available to White does not mean that the case should necessarily have been continued further. White did have an opportunity to object to proceeding at that time. If White had wanted a further delay in view of the fact that Schultz was not available as advisory counsel, he certainly could have requested it. He did not do so. Accordingly, I cannot see that the record demonstrates any error by the trial court in declining sua sponte to further delay the trial to allow White more time to try to hire counsel.

---

dant, who was fully informed, wanted. Counsel was not limited to an advisory role. In my view, these cases do not demonstrate that advisory counsel is equivalent in the court's eyes to a circumstance in which counsel is available to fully participate to the degree the

defendant desires. Thus, unlike the majority, I do not view the dismissal of advisory counsel as tantamount to the dismissal of a counsel who could have actually represented the accused.